UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ELL SHEHEE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>REDDING, et al.,<br><br>　　　　Defendants. | Case No.: 1:14-cv-00706-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 170] |

　　At the time this action was filed, Plaintiff Gregory Ell Shehee was a civil detainee proceeding pro se in a civil rights action pursuant to 42 U.S.C. § 1983.

　　Currently before the Court is Defendants' motion for summary judgment, filed December 13, 2019.

**I.**

**RELEVANT BACKGROUND**

　　This action is proceeding on Plaintiff's third amended complaint and claim of excessive force against Defendants J. Redding, J. Blanco, K. Peugh, J. Gonzalez, M. Clark, R. Davis, B. T. Bales, Pamela Ahlin, Audrey King, and Jack Carter with respect to an incident on January 31, 2011.

　　On August 15, 2017, Defendants filed an answer to the third amended complaint. (ECF No. 102.) On August 17, 2017, the Court issued a second discovery and scheduling order. (ECF No. 103.)

On September 27, 2018, Defendants filed a motion to declare Plaintiff a vexatious litigant requiring security and issuance of a pre-filing order. (ECF No. 126.)

After Plaintiff failed to file an opposition as directed by the Court, Findings and Recommendations were issued to dismiss the action on November 27, 2018. (ECF No. 131.) On December 26, 2018, Plaintiff filed objections. (ECF No. 132.) On December 27, 2018, the Court vacated the November 27, 2018 Findings and Recommendations and granted Plaintiff thirty days to file an opposition to Defendants' September 27, 2018 motion. (ECF No. 133.)

On March 15, 2019, the undersigned issued Findings and Recommendations recommending that Defendants' motion to declare Plaintiff a vexatious litigant be denied. (ECF No. 141.)

On June 10, 2019, the Findings and Recommendations were adopted in full. (ECF No. 150.)

On August 14, 2019, the Court issued a second scheduling order setting the case for jury trial before District Judge Dale A. Drozd on April 7, 2020. (ECF No. 158.)

On this same date, the Court set the matter for a settlement conference on October 3, 2019 before Magistrate Judge Jeremy D. Peterson. (ECF No. 159.)

On September 5, 2019, Defendants filed a motion to amend the scheduling order. (ECF No. 163.)

On October 3, 2019, the settlement conference was conducted in which no settlement was reached.

On October 8, 2019, the Court granted Defendants' request to amend the scheduling order and extended the deadline to file a dispositive motion to December 16, 2019. (ECF No. 169.)

As previously stated, on December 13, 2019, Defendants filed the instant motion for summary judgment. (ECF No. 170.) Plaintiff has not filed an opposition and the time to so has expired. Local Rule 230(l). Accordingly, Defendants' motion is submitted for review without oral argument. Id.

## II.

### LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); <u>accord</u> <u>Simmons v. Navajo Cnty., Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, <u>Soremekun</u>, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d at 942 (quotation marks and citation omitted).

### III.

### DISCUSSION

#### A. Summary of Plaintiff's Complaint

On or about January 31, 2011, at approximately 5:30 a.m., Officers Redding, Gonzalez, Clark, Davis, and Bales used excessive force against Plaintiff.  Sergeant Peugh and Lieutenant Blanco failed to protect Plaintiff from the excessive force.  Defendants P. Ahlin, A. King, and J. Carter had a policy of ratifying or condoning the use of excessive force.

#### B. Defendants' Request for Judicial Notice

Defendants request the Court take judicial notice of the January 31, 2011, minute order, Fresno County Superior Court, case number F10100870.  (Req. for Judicial Notice (RJN), Ex. 1; ECF No. 170-3.

///

///

Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of any facts which may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) and (d); see also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of "court filings" as they are "readily verifiable, ant therefore, the proper subject of judicial notice.").

### C. Statement of Undisputed Facts[1]

1. Department of State Hospitals Coalinga (DSH-C) is a maximum security forensic hospital which houses sexually violent predators, mentally disordered offenders, and prisoners of California Department of Corrections and Rehabilitation who have mental disorders. (Declaration of A. King (King Decl.) ¶ 3; Declaration of J. Carter (Carter Decl.) ¶ 3.)

2. On January 31, 2011, Plaintiff was involuntarily confined at DSH-C in treatment unit 17. (Third Am. Compl. (TAC), pp. 5-6; ECF No. 88.)

3. On January 31, 2011, Plaintiff was scheduled for an arraignment in Fresno County Superior Court case number F10100870. (RJN, Ex. 1.)

4. Department of Police Services personnel at DSH-C were familiar with Plaintiff having a history of resisting instructions and orders and becoming combative. (Peugh Decl. ¶ 4; Declaration of M. Clark (Clark Decl.) ¶ 4.)

5. In response to a call that Plaintiff was refusing to go to R&R to go to court, Sergeant Peugh summoned Officers Redding, Bales, Clark, Gonzalez, and Davis to assist him with transporting Plaintiff to R&R. (Peugh Decl. ¶ 5.)

6. Lieutenant Blanco was not on duty at DSH-C on January 31, 2011 and had no involvement with Plaintiff or supervisory authority over the officers at DSH-C on that day. (Declaration of J. Blanco (Blanco Decl.) ¶ 5; Gonzalez Decl. ¶ 4; Peugh Decl. ¶ 3.)

7. At approximately 6:45 a.m. on January 31, 2011, Sergeant Peugh, and Officers

---

[1] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed. Local Rule 260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified third amended complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

Redding, Gonzalez, Clark, Davis, and Bales entered treatment unit 17 where Plaintiff was housed. (Peugh Decl. ¶ 6; Declaration of M. Clark (Clark Decl.) ¶ 6; Declaration of J. Redding (Redding Decl.) ¶ 5; Declaration of J. Gonzalez (Gonzalez Decl.) ¶ 5.)

8. Sergeant Peugh assigned officer Gonzalez as a back-up officer to assist officers Redding and Bale if necessary. (Gonzalez Decl. ¶ 5.)

9. As officers walked down the hall toward the nursing station where Plaintiff was standing, he walked down the hall and entered his room, T17-147. (ECF No. 88 at p. 6; Gonzalez Decl. ¶ 5; Redding Decl. ¶ 5; Clark Decl. ¶ 5, Peugh Decl. ¶ 6.)

10. Officers Redding and Bales entered room T17-147. (Peugh Decl. ¶ 9; Clark Decl. ¶ 6; Declaration of B.T. Bales (Bales Decl.) ¶ 8; Redding Decl. ¶ 8.)

11. On January 31, 2011, Pamela Ahlin was the Executive Director of DSH-C. (Declaration of P. Ahlin (Ahlin Decl.) ¶ 1.)

12. At no time did Ms. Ahlin have supervisory authority over DSH-C police officer. (Ahlin Decl. ¶¶ 15, 16.)

13. Ms. Ahlin was not involved in any investigative process regarding Plaintiff's complaints regarding force used on December 31, 2011. (Ahlin Decl. ¶ 19.)

14. On January 31, 2011, Ms. King was the Clinical Administrator at DSH-C. (Declaration of A. King (King Decl.) ¶ 1.)

15. As a Clinical Administrator Ms. King was responsible for nursing treatment for the patients, was responsible for central program services (group treatment for patient population, and the management and oversight of the social work and rehabilitation therapy departments at DSH-C. (King Decl. ¶ 2.)

16. At no time did, Ms. King have supervisory authority over DSH-C police officers. (King Decl. ¶¶ 2, 15.)

17. On January 31, 2011, Mr. Carter was the acting Hospital Police Lieutenant at DSH-C. (Declaration of M. Carter (Carter Decl.) ¶1.)

18. As the acting police Lieutenant his job duties included operational or administrative activities of a division, and supervising police operations. (Carter Decl. ¶2.)

5

**D.     Analysis of Defendants' Motion**

Defendants argue that Plaintiff cannot demonstrate an Eighth Amendment violation against any of the Defendants. Although Plaintiff has not opposed Defendants' summary judgment motion, the Court must consider Plaintiff's verified third amended Complaint to determine whether he has shown the existence of a genuine issue of material fact precluding summary judgment.

The Due Process Clause of the Fourteenth Amendment protects civil detainees from the use of excessive force which amounts to punishment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1197 (9th Cir. 2002). An excessive force claim brought by a person, confined in a state institution, who is not a "prisoner" subject to punishment, should be evaluated under the objective reasonableness standard of the Fourteenth Amendment as applied to excessive-force claims brought by pretrial detainees, and not under the Eighth Amendment excessive-force standard. Andrews v. Neer, 253 F.3d 1052, 1061 (9th Cir. 2001). This due process standard recognizes that the state is entitled to hold such a person in custody and that the detainee's confinement raises "concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations." Andrews v. Neer, 253 F.3d at 1061 (citing Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989)). The inquiry is whether Defendants' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (This determination is to be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."); see also Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2013).

The Court can consider various factors in evaluating the reasonableness which may include: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat perceived by the officer; and (6) whether the plaintiff was actively resisting. Kingsley v. Hendrickson, 135 S. Ct. at 2473 (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). "[T]he most important *Graham* factor is whether the suspect

posed an immediate threat to the safety of the officers or others." Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011) (internal quotation marks and citation omitted).

In conducting the reasonableness analysis, the Court must "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) (citation omitted). In sum, the operative question is whether the officer's actions were objectively reasonable in light of the facts and circumstances. Graham v. Connor, 490 U.S. at 397. Furthermore, the objective reasonableness of an officer's use of force must be judged from the perspective of a reasonable officer on the scene, "rather than with 20/20 vision of hindsight." Id. at 396.

To state a claim based on failure to protect, the plaintiff must allege that (1) the defendant "made an intentional decision with respect to" the plaintiff's conditions of confinement, which (2) "put the plaintiff at substantial risk of suffering serious harm," and (3) failed to take "reasonable available measures to abate that risk" in a way that (4) "caused the plaintiff's injuries." Castro v. Cnty of L.A., 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc). "With respect to the third element, the defendant's conduct must be objectively unreasonable[.]" Id. Although a showing of subjective intent is therefore not required, objective unreasonableness requires "more than negligence"—"something akin to reckless disregard." Id.

   1. Defendant Lieutenant J. Blanco

Plaintiff contends that Lieutenant Blanco failed to intervene and protect him from the force used by officers on January 31, 2011. However, Lieutenant Blanco declares, under penalty of perjury, that he was not on duty on January 31, 2011, because he was in training that day. In support, Blanco submits a copy of the relevant portion of the training record, along with a copy of the work schedule for January 31, 2011, which indicates that he was "TRN". (Blanco Decl. ¶¶ 5-6, Exs. A & B.) Accordingly, Defendant J. Blanco is entitled to summary judgment.

   2. Policy at DSH-C Supporting Excessive Force

Plaintiff contends that Defendants Ahlin, King, and Carter acted pursuant to a policy of condoning and ratifying the use of excessive force.

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Ashcroft v. Iqbal, at 556 U.S. at 678-79. A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotation marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

"In limited circumstances a supervisor's subsequent 'ratification' of another's conduct can form the basis for liability under § 1983." Peschel v. City of Missoula, 686 F.Supp.2d 1092, 1102 (D. Mont. 2009) (citing Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991)). "The decision to ratify specific conduct, however, must approve both the subordinate's decision and the basis for it, and the ratification decision must be 'the product of a "conscious, affirmative, choice" to ratify the conduct in question.'" Id. (citing Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003), rev'd on other grounds, 543 U.S. 194 (2004) (holding the failure of a police department to discipline in a specific instance is not an adequate basis for municipal liability under Monell). The circumstances of the ratification must also demonstrate that the supervisor had previously set in motion acts of others which caused the others to inflict a constitutional injury. Larez, 946 F.2d at 645-46. "The mere failure to discipline does not show condoning or ratification." Brooke v. Cty. of Fresno, 98 F. Supp. 1103, 1129 (E.D. Cal. 2015).

Plaintiff has failed to demonstrate or submit evidence showing that Supervisory Defendants Ahlin, King and Carter were personally involved in an alleged constitutional deprivation, or that any

of them instituted a deficient policy. Further, Plaintiff has alleged no facts as to the existence of any relevant policy, custom, or practice giving rise to the alleged excessive force on January 31, 2011.

    a.    **Ms. Ahlin**

On January 31, 2011, Ms. Ahlin was the Executive Director of DSH-C. Ms. Ahlin declares, under penalty of perjury, that as Executive Director she "did not draft language or formulate or develop policies and procedures." (Ahlin Decl. ¶ 15.) Rather, her "role was to review and, if appropriate, approve policies submitted" to her. (Id.) Ms. Ahlin "never saw, had knowledge of, or approved any policy at DSH-C to condone or ratify uses of excessive force at DSH-C." (Id.) Ms. Ahlin did not have supervisory authority over the police officers on January 31, 2011. (Ahlin Decl. ¶¶ 15, 16.) Further, Ms. Ahlin was not involved in any investigative process regarding Plaintiff's complaints of the use of force on January 31, 2011.[2] (Ahlin Decl. ¶ 19.) Thus, there was no causal connection between the action or inaction of Ms. Ahlin and any force against Plaintiff on January 31, 2011. Accordingly, Defendant Ahlin is entitled to summary judgment.

    b.    **Ms. King**

On January 31, 2011, Ms. King was the clinical administrator for all of the nursing treatment at DSH-C. (King Decl. ¶ 1.) She oversaw group treatments and the management and oversight of rehabilitation therapy departments at DSH-C. (King Decl. ¶ 2.) She did not have any direct involvement in the development or implementation of use of force policies at DSH-C. (King Decl. ¶¶ 2, 15.) Further, Ms. King was not in the police chain of command, and did not have any supervisory authority over any of the police officers involved. (Id.) Ms. King was not involved in the officers' actions on January 31, 2011. Plaintiff has not shown a causal connection between her title and the actions on January 31, 2011. Accordingly, Defendant King is entitled to summary judgment.

    c.    **Mr. Carter**

Plaintiff contends Carter was the Chief of Police Services on January 31, 2011. However, on January 31, 2011, he was Acting Hospital Police Lieutenant. (Carter Decl. ¶ 1.) As Acting Hospital Police Lieutenant, he declares that he was not responsible for the development of any use of force

---

[2] Ms. King's declaration refers to the date as December 31, 2011; however, the Court presumes a typographical error as the date is clearly January 31, 2011.

policies at DSH-C. (Carter Decl. ¶ 2.) Carter was not responsible for development of any use-of-force policies at DSH-C. (Id.) Therefore, Plaintiff has not and cannot establish a causal connection between any action of Mr. Carter and the force used on him on January 31, 2011. Further, although Mr. Carter was acting lieutenant on January 31, 2011, Plaintiff has not shown a causal connection between his title and the actions on January 31, 2011. Accordingly, Defendant Carter is entitled to summary judgment.

    4.  <u>Defendants R. Davis, M. Clark, Gonzalez, Peugh, Bales and Redding</u>

It is undisputed that on January 31, 2011, Plaintiff was scheduled for a mandatory court appearance for an arraignment in Fresno County Superior Court case number F10100870. (RJN, Ex. 1.)

Defendants Officers Davis and Clark declare that they entered treatment unit 17 with the other officers but had no role in the attempt to gain compliance of Plaintiff or his transport to R&R. (Clark Decl. ¶ 7; Gonzalez Decl. ¶ 6; Peugh Decl. ¶ 5, Bales Decl. ¶ 6.)

Defendant Gonzalez declares that Sergeant Peugh assigned him to act as back up for Officers Bales and Redding. Gonzalez further declares that he assisted in moving Plaintiff's bed but did not have physical contact with Plaintiff. (Gonzalez Decl. ¶ 5.)

Defendant Sergeant Peugh argues that his actions were not malicious, sadistic or for the purpose of causing injury. Peugh declares that he was notified by DSH-C staff that Plaintiff was not complying with an order to attend a court hearing. He summoned officers to assist him in securing Plaintiff to attend the hearing.

Defendants Bales and Redding argue that Officers Bale and Redding are entitled to summary judgment because their actions were not malicious, sadistic or for the purpose of causing harm.

However, in Plaintiff's third amended complaint, Plaintiff alleges that on January 31, 2011, at approximately 5:30 a.m., while housed at DSH-C in unit 17, he came out of a four man room, walked by the nursing station to get in line for morning medication. (Third Am. Compl. at 6, ECF No. 88.) However, due to the number of patients in the line, Plaintiff turned around and headed back to his room. (Id. at 6.) Plaintiff had a telephone in his right hand and was on three way call with two other individuals. (Id.) Plaintiff saw several officers running to his room. Plaintiff requested to put on

some long pants. (Id. at 7.) Defendant Redding reached for Plaintiff's left shoulder, and Plaintiff stepped back and asked "what did I [do]." (Id.)

Plaintiff contends Defendant Redding caused sufficient injuries by slamming Plaintiff's head on the cement floor and taking his "right arm trying to [break] the bone causing pain and suffering." (Id. at 4.) Defendant Redding also dropped his knee into the right side of Plaintiff's spine causing great pain and suffering. (Id.) Defendants Redding and Gonzalez were forcefully trying to break Plaintiff's arm. (Id. at 7.) Defendants Redding, Gonzalez, Clark, David, and Bales jumped on Plaintiff causing pain and suffering while Plaintiff was inside his cell legally blind and handicapped. (Id. at 5.) Defendants Redding, Gonzalez, Clark, David and Bales intentionally slammed the right side of Plaintiff's head on the concrete floor. (Id. at 7.) Defendants Bales, David, Clark were hitting Plaintiff with closed hands in his spine. (Id.) Defendant Redding was on Plaintiff's left side spine and Defendant Gonzalez was on Plaintiff's right side spine. (Id. at 8.) Defendant Peugh allowed the excessive force to take place and failed to intervene to protect Plaintiff. (Id. at 5.) All of the Defendants knew that Plaintiff had previously had spine surgery. (Id. at 8.)

The Court may not resolve disputed issues of material fact by crediting one party's version of events and ignoring another. Wall v. County of Orange, 364 F.3d 1107, 1111 (9th Cir. 2004) ("By deciding to rely on the defendants' statement of fact [in deciding a summary judgment motion], the district court became a jury."); see also Smith v. City of Hemet, 396 F.3d 689, 701 (9th Cir. 2005) ("Because [the excessive force inquiry] nearly always requires a jury to sift through factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.") (citing Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)). While Defendants contend that Plaintiff refused to leave his cell for his court appearance, Plaintiff tells a different story. Given Defendants' admission that they were involved in removing Plaintiff from his cell and based on the conflicting accounts of the amount of force used, the Court finds a genuine issue of material fact as to whether unreasonable force was used under the circumstances.

///

///

5. Qualified Immunity

Defendants seek qualified immunity on Plaintiff's Fourteenth Amendment excessive force claim. However, Defendants fail to meet either prong of the qualified immunity test.

"Qualified immunity shields public officials from civil damages for performance of discretionary functions. It is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Mueller v. Auker, 576 F.3d 979, 992 (9th Cir. 2009) (italics in original and citation omitted). "Qualified immunity shields a[ correctional] officer [or medical staff member] from suit when [they] make[] a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [they] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "The purpose of this doctrine is to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." Mueller, 576 F.3d at 993.

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, … show the officer's conduct violated a [federal] right[.]'" Tolan v. Cotton, 572 U.S. 650, 655-56 (2014) (citation omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 656 (citation omitted). In applying the qualified immunity doctrine, courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In analyzing the second prong of qualified immunity, the Court notes that clearly established law must be defined with a "high 'degree of specificity.' " District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018) (quoting Mullenix v. Luna, 136 S. Ct. 305, 309 (2015) (per curiam)); City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 502-04 (2019). This standard is "demanding." Wesby, 138 S. Ct. at 589. The "legal principle [at issue] must have a sufficiently clear foundation in then-existing precedent." Id. It "must be 'settled law,' ..., which means it is dictated by 'controlling

authority' or 'a robust consensus of cases of persuasive authority,' " rather than merely "suggested by then-existing precedent." Id. at 589-90 (citations, some internal quotation marks omitted).

First, as discussed above, and accepting the allegations in the third amended complaint as true, Plaintiff alleges sufficient facts to support a cognizable legal theory that Defendants used excessive force in violation of Plaintiff's Fourteenth Amendment rights. See Pearson v. Callahan, 555 U.S. at 232; Butler v. San Diego Dist. Attorney's Office, 370 F.3d 956, 963 (9th Cir. 2004). Thus, Defendants fail to meet the first prong of the qualified immunity test. Second, a civilly committed individual's right to reasonable conditions of safety, including freedom from excessive force that amounts to punishment, is and was clearly established in January 2011. See Youngberg v. Romeo, 457 U.S. 307, 321 (1982); Bell v. Wolfish, 441 U.S. 520, 536 (1979) (holding the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment); Graham v. Connor, 490 U.S. at 396 (officer's use of force must be proportional to the need for such force). Thus, Defendant fails to meet the second prong of the qualified immunity test. Accordingly, the Court finds Defendants are not entitled to qualified immunity on Plaintiff's Fourteenth Amendment excessive force claim.

The Court finds that based on Plaintiff's allegations he has demonstrated that Defendants' actions violated his rights under the Fourteenth Amendment rights by the use of unnecessary force on January 31, 2011. The Court also finds it was clearly established at the time that the application of intentional and unnecessary force on an inmate force on an civil detainee violated the Fourteenth Amendment. As discussed above, the Court also finds there is a genuine dispute of material fact as to what actually occurred on January 31, 2011. Thus, whether Defendants acted reasonably and under the belief their conduct was lawful is a question which must be resolved by the trier of fact. For these reasons, the Court finds that Defendants are not, on the current record, entitled to qualified immunity.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted in part and denied in part as follows:

      a.      Defendants' motion for summary judgment be granted in favor of Defendants Blanco, Ahlin, King and Carter; and

      b.      Defendants' motion for summary judgment be denied as to Defendants R. Davis, M. Clark, Gonzalez, Peugh, Bales and Redding.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **June 30, 2020**

UNITED STATES MAGISTRATE JUDGE